# Martinsburg Bank *v.* Central Pa. Telephone & Supply Co., Appellant.

*Parol variation of written contract—Mistake—Negligence.*

A master's findings of fact, approved by the court, were to the effect that prior parol negotiations, both verbal and written, providing for a stipulated future abatement to regular rates in rental of a telephone instrument, were omitted by mistake from the contract as afterwards formally drawn and executed and should be read into it. No conversation as to the contents of the paper took place at the time of signing and it was not read. The evidence as to prior and subsequent negotiations between the parties tended to support this finding. *Held*, but not without difficulty, that there was no such plain error in the findings of the master as required a reversal.

Signing upon mere supposition, without knowledge or inquiry, comes dangerously near negligence: Per MITCHELL, J.

*Findings of fact by master—Telephones—" Regular rates."*

What parties mean by the use of words in a parol contract is always a question of fact in the particular case, and the findings of a master affirmed by the court will not be reversed except for plain error. In this case "regular rates" for telephone service were held to mean rates, charged in the neighborhood.

*Equity—Injunction—Perpetual injunction—Contract terminable by notice.*

Where it appeared upon the face of a contract that it may be terminated upon specified notice, a perpetual injunction against a threatened breach granted by the court below will be modified so as to correspond with the provisions of the contract.

Argued April 19, 1892. Appeal, No. 142, July T., 1891, from decree of C. P. Blair Co., No. 169, in equity, continuing injunction to restrain removal of telephone instrument. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

The facts found by the master, Aug. S. Landis, Esq., were, *inter alia*, as follows:

Plaintiff, in 1888, desiring telephone service at Martinsburg, was called upon by defendant's superintendent W. L. Malin, who proposed to furnish telephone connection with the Hollidaysburg exchange, provided defendant would procure three other subscribers in Martinsburg. The terms for the first two years were for defendant $100 a year, and for the three other subscribers $60 a year each. Plaintiff's witnesses, who were the other sub-

scribers, testified that the superintendent's verbal offer was that, after July 1, 1890, plaintiff and the others should pay at regular rates, to wit, those paid for services at Roaring Spring, the nearest point then served. Defendant denied the making of such offer, or that there was any regular or uniform rate for service. Further evidence on this point was as follows: On Feb. 3, 1888, plaintiff's cashier, Nicodemus, wrote defendant's superintendent: "We have fully considered your proposition, that is, $100 per year for two years, after that time at the regular rates, and . . . . . we accept it." The superintendent replied by letter dated Feb. 6: "I think your acceptance of my proposition closes the telephone matter for Martinsburg. . . . . I have referred it to our general office and hope for orders in a few days to go to Martinsburg and close contract."

The superintendent afterwards prepared, upon defendant's usual blank, a form of contract, which was signed by plaintiff's president on Feb. 25, 1888. It requested defendant to furnish a telephone for plaintiff's use until July 1, 1890, and thereafter until the agreement should be terminated by thirty days' notice from either party to the other, the terms being $8.33 per month in advance, and continued thus: "This request becomes a binding contract so soon as accepted by the manager of the exchange, by his signature hereto, or by furnishing said instruments. Its terms cannot be varied or waived by any representations or promises of any canvasser or other person, unless the same be in writing and signed by the manager."

After July 1, 1890, plaintiff offered to pay four dollars a month, but defendant demanded five, which was the uniform rate paid by subscribers in Martinsburg, and, on its refusal threatened to remove the telephone on thirty days notice, unless paid as per contract. Plaintiff then filed its bill, and an injunction restraining defendant from such removal was granted and continued, and referred to the master, who found specifically (1) that the evidence was clear, precise and indubitable that there was an accident or omission in the written contract of Feb. 25, 1888, and that it violated the manifest intention of the parties; (2) that plaintiff was to pay defendant $100 per annum for the two years ending July 1, 1890, and after that was to pay the usual or regular rates; (3) that such rates were four dollars per month; (4) that the provision in the written

contract, that its terms could not be varied except by writing signed by the manager, did not affect the question; and (5) reported a decree accordingly, continuing the injunction and putting the costs upon the parties equally. Defendants filed exceptions to the findings as above, which were dismissed by the court below, DEAN, P. J., and decree signed as suggested. Defendant thereupon appealed.

*Errors assigned* were (1-5) dismissing exceptions, quoting them; and (6) continuing injunction without limit as to time.

*H. M. Baldrige*, for appellants, cited, as to prior conversations, Caley v. Hoopes, 86 Pa. 493; Hill v. Schmucker, 1 Woodward 251. As to motive for signing, Spencer v. Colt, 89 Pa. 314; Thomas v. Loose, 114 Pa. 35; Ferguson v. Rafferty, 128 Pa. 314. As to varying terms of printed contract by agent, Advertising Co. v. Meyers, 20 W. N. 388. As to doubtful covenants, Hilliard, Inj., 2d ed., p. 293, § 8, p. 44, § 44; High, Inj., §§ 695, 696, 718, 720.

*Martin Bell* and *John D. Blair*, for appellee, cited Warner v. Landis, 137 Pa. 61. As to prior letters modifying contract, Mining Co. v. Jones, 108 Pa. 55. As to printed words in a blank, Grandin v. Ins. Co., 107 Pa. 26; Haws v. Fire Asso., 114 Pa. 431. As to clause against varying terms of printed contract by agent, McFarland v. Kittanning Ins. Co., 134 Pa. 590. As to master's findings approved by court, Kisor's Ap., 62 Pa. 428; Kirby's Ap., 134 Pa. 109; Bugbee's Ap., 110 Pa. 331. As to duty of defendant as common carrier to furnish telephone, Bell Tel. Co. v. B. & O. Tel. Co., 17 W. N. 605.

OPINION BY MR. JUSTICE MITCHELL, July 13, 1892.

It is with some difficulty that we sustain the finding of parol stipulations of the contract not included in the writing. The latter is clear and explicit, and the evidence to vary it is entirely lacking in the element of any misleading representation at the time of signing, or of any fraud or accident. The only ground of equitable reformation is the mistake of the bank president as to the agreement of the writing with the previous negotiations. As to this the learned master finds that the president "when he signed the agreement supposed it was in accordance with what he had learned was concluded upon in the negotiations between his subordinate bank

officers and Mr. Malin." But it was his business to know, or if he did not know, to inquire of his subordinates who did. Signing upon mere supposition without knowledge or inquiry comes dangerously near negligence, and "the mistake to be relieved against in equity must be one that is mutual, material and not induced by negligence:" Bispham, Equity, § 191. The evidence however does tend to show, by the letter of Malin, appellant's superintendent, and by the testimony of the bank cashier and others, that the preliminary negotiations were on the basis of "regular rates" after the first two years, and there is no evidence of any subsequent or different negotiations, the finding of the master being that "no conversation as to the contents of the paper took place" at the time of signing. Moreover the subsequent action of appellant in offering to reduce the rate for complainant to the same as the others were paying is some evidence that the understanding of the bank officers as to the reduction of the charge to regular rates after two years was mutual. This is the view taken by the learned master and confirmed by the court below, and we conclude, though as already said, not without difficulty, that no such plain error has been shown as requires us to reverse upon this point.

Conceding then, that the contract was for "regular rates" after the first two years, we come to the question what are such rates. *Prima facie* the term must be construed with reference to rates paid by other parties at the same time, in the same place, and for the same service. They are not necessarily the same for different places, even though in the same vicinity. The distance from the central office, the nature of the country between as affecting the cost of construction and maintenance, the number of customers and the kind of service supplied are all elements to be considered in fixing a remunerative and yet reasonable rate. But while therefore there is no presumption that regular rates for one place are the same as for another even though near at hand, yet what parties mean by the use of the words in a parol contract is always a question of fact in the particular case. The witnesses on the part of the complainant concur in their testimony that in the negotiations with the appellants for the introduction of the telephone line into Martinsburg the term regular rates was used with reference to the rates paid by subscribers in neighboring towns, es-

pecially in Roaring Spring. Thus Skyles says explicitly that, at the interview between Malin, Nicodemus and himself, he wanted to know why they charged more than at Roaring Spring, and the explanation was that it was on account of the expense (presumably of the introduction of the line) and would only last two years, and "after that to come in at the Roaring Spring rate." This part of the agreement is denied by Malin, but his denial is based largely upon his general testimony that there were no regular rates at all, which in turn is materially weakened by the admitted fact of the use of that term in the correspondence immediately preceding the contract, as well as in the verbal negotiations. The master has found as a fact that the parties dealt on the basis of the existence of regular rates, by which they meant at least for the purposes of this contract the rates charged in the neighboring town of Roaring Spring. It was purely a question of fact, the master had the witnesses before him and we have not been convinced that his conclusion was wrong.

In one respect however the decree needs modification. Though the injunction is not in terms called perpetual yet that is the general effect of the wording. There is nothing in the bill to support such a decree. The bill is founded entirely on the contract between the parties, and the contract is express that after two years it may be terminated by either party on thirty days notice in writing. Complainant is clearly not bound to a perpetual or indefinite continuance of its subscription, nor by the contract can the appellant be so held to render the service. Whether the appellant by reason of its public franchise is under obligation to supply the complainant so long as it maintains its line in Martinsburg is a question not raised by the case, though discussed in the paper book of appellee.

The injunction is limited to continue until the termination of the contract by notice in accordance with its provisions, and with this modification the decree is affirmed. Costs of this appeal as well as the costs below to be paid equally by the parties.