## Philadelphia, Appellant, *v.* Philadelphia Rapid Transit Company.

*Street railways—Rates of fare—Contract with municipality—Free transfers—Change of rate.*

Where a contract between a city and a street railway company provided "that the present rates of fare may be changed from time to time, but only with the consent of both parties hereto," and it appears that "the present rates of fare," were five cents for a continuous ride, or tickets sold in strips at the rate of six for twenty-five cents, and free transfers at certain intersections issued both on cash fare and tickets, the company does not violate the terms of the contract by changing its rule so as to issue free transfers only to persons who pay a cash fare of five cents, and not to those who pay their fare by ticket.

Argued March 26, 1909. Appeal, No. 45, Jan. T., 1909, by plaintiff, from decree of C. P. No. 5, Phila. Co., June T., 1908, No. 6,690, dismissing bill in equity in case of City of Philadelphia v. Philadelphia Rapid Transit Company. Before MITCHELL, C. J., FELL, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for the specific performance of a contract and for an injunction.

STAAKE, J., filed an opinion in which he stated the facts to be as follows:

This is a bill in equity praying for a decree against the defendant:

1. "That each ticket purchased of the defendant at the rate of six tickets for twenty-five cents shall have all the effect of a cash fare of five cents."

2. That the defendant may be required to perform its contract with the plaintiff and accept such tickets, with like effect, as if fares of five cents each were paid by its passengers, and to issue transfers thereon in like manner, for the same points and for the same routes and distances as those for which the said transfers were issued upon the payment of such tickets on and immediately after July 1, 1907, and until May 18, 1908.

3. That the rule of the defendant company, "by virtue of which on and after May 18, 1908, it refused to issue transfers as theretofore issued to those who had paid their fare by ticket," and by which such transfers were issued "only at the time a five cent cash fare is paid, and only when asked for by the passenger at the time of the payment of the cash fare," and the "orders" of the said company defendant, abolishing certain transfers which had theretofore been granted, so that on, from and after said May 18, 1908, such transfers were not issued, and passengers were and still are required to pay a second or additional fare for the ride, which theretofore had been granted for the one fare, should be decreed to be unauthorized and unlawful, and in violation of a contract of the city of Philadelphia with the defendant company dated July 1, 1907, made under the provisions of an ordinance of the councils of the city of Philadelphia, duly approved by the mayor of the said city on July 1, 1907, entitled, "An ordinance authorizing the execution of a contract between the City of Philadelphia and the Philadelphia Rapid Transit Company, affecting, fixing and regulating the duties, powers, rights and liabilities of the City and of the Philadelphia Rapid Transit Company and its subsidiary companies, and the relations and the respective interests of the contracting parties, providing

for the future management and extension of the street railway system controlled by the Philadelphia Rapid Transit Company, and the final acquisition of its leaseholds and property by the City, and repealing so much of former ordinances as is inconsistent therewith."

4. That an injunction may issue against the defendant company enjoining the company defendant and prohibiting it from carrying out the terms of the said rules and orders and each of them.

5. That the plaintiff may have such further and different relief as may be or become necessary or proper in the premises.

The city averred that the eighth section of the said contract provided:

"The city hereby confirms to the company and its subsidiary companies all of the consents, rights and franchises heretofore granted to, and exercised by them, and each of them, including the right of operation by the overhead trolley system, free of all terms, conditions and regulations not herein provided for, and does further give up and surrender and agree not to exercise any rights which it may possess in respect to a repeal or resumption of any of the said rights now possessed or heretofore granted, or a taking over of any of said properties, any law, ordinance or contract now in force, or hereafter passed to the contrary notwithstanding: Provided, however, That the present rates of fare may be changed from time to time, but only with the consent of both parties hereto: And provided further, That nothing in this contract contained shall be construed to limit the power of the city to make all rules and regulations, relating to the operation and management of the lines controlled by the company, necessary and proper to be made under the police power," and that:

"At the time when the said contract was made there were three rates of fare of the defendant company," viz.: a cash fare of five cents for each passenger, a fare of eight cents for which the passenger received what was called an exchange ticket, and for which he was entitled to ride upon a car of an intersecting line from the point of intersection, and that the company also sold through its conductors six tickets for twenty-five cents,

each of which was good for a fare and was received as the precise equivalent of a cash fare of five cents.

It was also averred that prior to said May 18, 1907, the company defendant issued "transfer tickets," which were given to passengers without extra charge to enable them to ride from certain intersections upon other lines.

It was contended that the refusal to issue such free transfers as issued prior to May 18, 1908, and the abolishment of many of the transfer points on and after May 18, 1908, resulted in an increase of the fare of those who theretofore had paid by ticket or had purchased exchange tickets.

It was also averred that this "increase was not made with the consent of the City of Philadelphia" and that the increase was a change of "the present rates of fare" referred to in the proviso of the said eighth section of the contract of the company defendant with the city.

The company defendant, while admitting in its answer that at the time of the making of the contract "there were the three rates of fare," as averred by the city, averred that it is a leasing and operating company, controlling and operating "seventy-five different lines of street passenger railways, which under their various charters are entitled to charge a separate fare of not more than five cents for a ride over that line only." That the rate of fare, upon all of the companies they are operating, was five cents and they are advised that when the words "rates of fare" were used in the said eighth section they were used with reference to the rates established by all the various companies for a single ride, namely, five cents. All other rates of fare referred to by the city were averred to be in the nature of commutation rates, but it was denied, "that there was any contract or agreement or binding obligation on the part of the company to give any passenger four rides for eight cents or twelve rides for twenty-five cents." That the company had established numerous points at which a free transfer was given, entitling the holder to a further ride upon an intersecting line was admitted, but it denied "there was any right in the holder of an exchange ticket or a package ticket to demand such transfer."

It was further answered, that "by means of various Acts of the Legislature, particularly the Act of May 15, 1895, P. L. 65, the defendant as an operating company was allowed to operate all lines controlled by it as a single system, laying out new routes partly over one line and partly over another."

Defendant admitted that in order to develop its business and accommodate the public, it "established from time to time and changed and took off and re-established transfer points," but at no time had it agreed "to issue transfers of this character either to the holder of an exchange ticket, who secured the same at the price of eight cents for two rides, or to the holder of a six-for-a-quarter ticket, who got a reduced rate for six rides and not for twelve rides."

Defendant also averred that these transfers were at all times issued to passengers at the time they left the car and not at the time they paid their fare, and it was therefore impossible for a conductor to know who had paid a full fare and who had given either an exchange ticket or a commutation ticket, and it was averred that no order had ever been made permitting or authorizing the issue of transfers to any parties except those paying the full fare, but admitted certain abuses had crept into the handling of exchange tickets, for the correction of which abuses the order complained of by the city had been made. The nature and character of these abuses is fully set out in the answer.

The issuing and enforcement of the order of May 18, 1908, is admitted, but it is averred that the order was not in any respect a change in the orders or regulations of the company although it did result in a change of conditions which had arisen from the said abuse of privileges made possible by the manner in which transfers were previously issued.

It was denied that on May 18, 1908, any transfer points were abolished, but admitted in certain cases parties who had theretofore "secured four rides for eight cents or two rides for four-and-one-sixth cents can no longer secure two rides for less than five cents, or at the rate of two-and-one-half cents each."

It was admitted that the order of May 18, 1908, complained

of was made without the consent of the city of Philadelphia. It was denied that the order was an increase or change in the rate of fare and that "consent by the city" was necessary to make the order effective. The defendant further denied "any intention to violate either the letter or the spirit of the contract with the city of Philadelphia."

The case was heard by the court upon bill and answer, there being no proofs submitted.

The court entered a decree dismissing the bill.

*Error assigned* was decree dismissing the bill.

*J. Howard Gendell,* city solicitor, with him *James Alcorn,* assistant city solicitor, for appellant.—We deny that the transfer ticket is a new fare, or a free ticket, or that the passenger gets an additional ride for nothing. It is as clearly an incident of the original fare as is the ride upon an exchange ticket, and the transfer of the passenger to the second car is an incident of the passage which is fully paid for by that original fare.

In Chicago Union Traction Co. v. Chicago, 199 Ill. 484 (65 N. E. Repr. 451), it was decided that the right to regulate fares includes the right to regulate transfers. Curiously enough, the very word "incident" which we have used without reference to that decision is used by the court and applied in a manner that is the exact reverse of the gist of the opinion of the court below in this instance.

One other point raised by defendant is that the tickets are "in the nature of commutation rates." This may be questionable; but if true, what of it? Does not the agreement relate to all of the then "present rates of fares"?

In the case of Penna. R. R. Co. v. Philadelphia County, 220 Pa. 100, respecting the constitutionality of the two cent rate law, all fares of every kind and description, including cash, plain tickets, excursion or round-trip tickets, commutation tickets and workmen's tickets, were taken into consideration. See also Virginia Pass. & Power Co. v. Com., 103 Va. 644 (49 S. E. Repr. 995; Smith, Executrix, v. Markland et al., 223 Pa. 605.

*Ellis Ames Ballard* and *John G. Johnson,* with them *James*

*Gay Gordon*, for appellee.—The contract intended to leave the question exactly where it found it, viz., a restriction upon the basic rate as it had been established and as it existed, leaving to the company as a detail of management the regulation of transfers and commutation rates: Reeves v. Traction Co., 152 Pa. 153; Detroit v. Detroit Citizens' St. Ry. Co, 184 U. S. 368 (22 Sup. Ct. Repr. 410).

In any event the words "rates of fare" apply only to the rate for a continuous ride without changing from one line to another: Ellis v. Milwaukee City Ry. Co., 67 Wis. 135 (30 N. W. Repr. 218); Tophan v. Interurban St. Ry. Co., 89 N. Y. Supp. 298; Old Colony Trust Co. v. Atlanta, 83 Fed. Repr. 39; State ex rel. v. St. Paul City Ry. Co., 78 Minnesota, 331 (81 N. W. Repr. 200); Lake Shore, etc., Ry. v. Smith, 173 U. S. 684 (19 Sup. Ct. Repr. 565).

The order complained of does not take away a single transfer point; it merely regulates the issuing of transfers in order to stop abuses, and the incidental change in cost to a few riders in particular cases is de minimis.

OPINION BY MR. JUSTICE STEWART, April 26, 1909:

Prior to the organization of the Philadelphia Rapid Transit Company, here the appellee, the lines of street railways in the city of Philadelphia were owned and operated by several independent companies. With a view to unify these to the extent of bringing them under a common system and management, the Philadelphia Rapid Transit Company by lease and otherwise acquired control of all of them. This control, while it allows each company to retain its separate existence, commits to the traction company the operation, management and regulation of each line of railway. The several companies differed both in their charter rights, and in their municipal privileges and obligations as well. To make these latter fixed, fair and uniform, to supersede former regulations, and to define and regulate the relations thereafter to be observed between the city and the railways—so reads the agreement— the contract of July 1, 1907, was entered into between the city and the traction company. In its entirety the contract does

not concern us. It is quite enough to say of it that the advantages derived thereunder are reciprocal. It is only the limitation imposed by a proviso in the contract on the right of the company to change the rates of fare that calls for consideration here. The proviso is as follows: "Provided, however, That the present rates of fare may be changed from time to time, but only with the consent of both parties hereto." At the time the contract was entered into, the regular fare charged on each line for a continuous ride in the same car, irrespective of distance traveled, whether for a square or to the terminus, was five cents. This fare was uniform throughout the city. For reasons of its own, not that it was compelled by law or ordinance to do so, the traction company had been accustomed to offer to the public cards or slips containing six printed, detachable tickets, each entitling the holder to a single continuous ride, for twenty-five cents. Each ticket was regarded as the equivalent of a five cent fare, and secured to the holder the same privileges. In addition, the company had in force at the date of the contract a system of free transfers which allowed one who paid a single fare, whether in cash or by ticket, to complete his ride on certain connecting roads without further charge. For reasons not necessary to discuss, the traction company has since the date of the contract discontinued such privilege when the fare is paid by ticket, and allows it only in cases where a cash fare has been paid. The bill complains that this action of the company is a change in its established rates of fare in force when the contract was entered into, inasmuch as it requires now a cash payment of five cents to secure the same transfer ride which before could be had on a ticket costing but four and one-sixth cents; and since the change was made without the consent of the city, an injunction was asked for to restrain the company from discriminating in the way indicated. The question thus presented is a very narrow one. The expression "rates of fare" as used in the proviso is more or less inapt, and therefore lacks definiteness. We are not aided in its interpretation by anything elsewhere appearing in the contract. The proviso is left to speak for itself. Strictly speaking, the traction com-

pany had no established rates of fare when it entered into this contract. A rate is the measure of a thing by its ratio or relation to some fixed standard. When a certain sum is determined for a particular service, unless it is proportional and comparative according to a recognized standard, it is not a rate, but a charge. The compensation which this company was accustomed to receive for the facilities it afforded had relation to no standard. The five cent fare for one continuous ride was not measured by distance traveled or anything else that would suggest proportion; and the same must be said of every other fare it required. None of them was determined by ratio. It is quite evident, however, that the reference in the proviso was to the charges and fares the company was receiving at the date of the contract; it could be to nothing else. Accepting this as the meaning, it is necessary, first, to inquire what these several charges were. We have referred to one— five cents for a single continuous ride in the same car. Another was, eight cents for a single change from one car to another on certain intersecting lines. It is not denied that these charges fall within the meaning of the proviso. No attempt has been made to change these in any particular. It is contended that there was also a third .charge, distinguishable from those mentioned, which also falls within the proviso, viz.: twenty-five cents for six tickets when purchased together, each ticket being the equivalent of a five cent cash fare, and entitling the holder to equal service. It must be conceded, we think, that if this were a distinct charge within the contemplation of the parties, the change that is complained of with respect to it would be violative of the terms of the contract, since the ticket is no longer the full equivalent of a five cent fare, in that it will not now purchase the same facilities in the way of transfer. The question is—was it such a charge? The case turns upon the answer. The sum of twenty-five cents distributed upon six tickets makes the cost of each, considered separately, four and one-sixth cents. This simple statement would seem to show such a reduction in cost to the purchaser as would warrant a conclusion that the company had two charges for the same service, that is, the continuous ride, one

five cents, and another four and one-sixth cents. But this method of differentiating does not express the whole truth as we need to know it for a proper determination of the question. Clearly the four and one-sixth cents charge is not all the company exacts in the way of payment when it sells by ticket. One ticket cannot be purchased for that sum. In order to get one the purchaser must buy six, and pay twenty-five cents before he gets any service whatever in return. It results that the company gets the benefit of this advance payment without interest. Where all the six tickets are used promptly, the advantage derived by the company in this respect may be too slight to be considered; but, as everyone knows, all are not used promptly; and it is not mere speculation to say that the general average would show a very substantial benefit enuring to the company from this source, an advantage which could be very fairly regarded as the full equivalent of the amount abated. Whatever the company gains in this way is at the cost of the party purchasing, of course. These considerations would indicate that in adopting this charge for tickets the company had no intention of departing from the five cent standard charge for a continuous ride; but that what was intended, and all that was intended, was an equitable adjustment on the basis of a five cent fare for a continuous ride, which would advantage its patrons in the way of convenience without entailing loss upon the company. If any other purpose controlled, it is not apparent what it was. The company was all the while adhering to this five cent charge for the general public. The ticket arrangement was one of its own devising, adopted not because forced upon it, but at its own pleasure. If the purpose was to reduce the charge, the question at once arises, to what end? It will hardly be contended that it was to gratify a generous impulse prompted by an overabundant income. No more can it be supposed that it was done with a view to increase the company's revenues through an enlarged traffic. The average individual would not be likely to take more rides during a month or year because of a reduction of five-sixths of a cent upon each ride. It is quite as inconceivable that its purpose was to give in-

dividuals who, without inconvenience to themselves, could spare twenty-five cents at any time, the advantage of a lower fare than was charged those who could conveniently spare no more than five cents each time they traveled. The only reasonable explanation is that in adopting the ticket system the object was to afford an additional convenience for a consideration in the way. of advance payment, which would equal the amount of the abatement in the fare in dollars and cents. Indeed, we think it so evident that the purpose of the company was to adhere to the five cent charge as a basis, that we are unable to see how the complainant in contracting with the company with respect to the matter of its fares, could have had any reason to suppose that the ticket system introduced any other. It is only by supposing that the understanding of the parties with respect to it was wholly different from what the transaction on its face imports as to its meaning and purpose, that we can read this ticket system into the terms of the proviso, and there is nothing in the case as presented that would give us warrant for so doing. If, then, it is not "a rate of fare" within the meaning of the proviso, but a mere regulation for the convenience of the public involving no change in charge—and this is our conclusion—it follows that the traction company in restricting its application in the manner complained of was strictly within its rights, and the concurrence of the city was not required.

The decree is affirmed and the bill dismissed at the costs of appellant.