# Philadelphia, Appellant, *v.* Philadelphia Rapid Transit Company.

*Street railways—Rates of fare—Contract with municipality—Free transfers—Change of rate—Strip tickets.*

1. Where a contract between a city and a street railway company provided "that the present rates of fare may be changed from time to time, but only with the consent of both parties hereto," and it appears that at the date of the contract the company charged five cents for a continuous ride, sold tickets in strips at the rate of six for twenty-five cents, and gave free transfers at certain intersections issued both on cash fares and tickets, the company does not violate the terms of the contract by discontinuing the sale of the strip tickets without the consent of the city.

2. In ordinary signification a rate of fare is the unit or basic price upon which the total charge is based. In the carrying of passengers by street railway companies the rate is fixed at a flat price per ride, without reference to the distance traveled, and this basic price for a single ride in the ordinary and legal signification of the term is the rate of fare. A total charge of twenty-five cents for six rides is not a rate of fare either in the etymological or legal sense.

MESTREZAT, J., dissents.

Argued Jan. 21, 1910. Appeal, No. 365, Jan. T., 1909, by plaintiff, from decree of C. P. No. 2, Phila. Co., June T., 1909, No. 1,581, dismissing bill in equity in case of City of Philadelphia v. Philadelphia Rapid Transit Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for the specific performance of a contract and for an injunction. Before SULZBERGER, P. J., WILTBANK and BARRATT, JJ.

The facts appear by the opinion of the Supreme Court and by the report of Philadelphia v. Philadelphia Rapid Transit Company, 224 Pa. 544. The court dismissed the bill, SULZBERGER, P. J., writing the opinion of the court and WILTBANK, J., filing a dissenting opinion.

*Error assigned* was the decree of the court. .

*J. Howard Gendell,* city solicitor, for appellant.—The words "rates of fare" must be construed in accordance with the intent of the parties, and this intent, we submit, is clear: People's Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22; Gass's App., 73 Pa. 39; Gillespie v. Iseman, 210 Pa. 1; District of Columbia v. Gallaher, 124 U. S. 505 (8 Sup. Ct. Repr. 585); Virginia Pass. & Power Co. v. Com., 103 Va. 644 (49 S. E. Repr. 995); Martinsburg Bank v. Telephone & Supply Co., 150 Pa. 36; Chase v. R. R. Co., 26 N. Y. 523; United States v. Ry. Co., 148 Fed. Repr. 646.

The case of Adams v. Union R. R. Co., 21 R. I. 134, comes the nearer to our own in various respects than any other that has been found.

*Ellis Ames Ballard* and *John G. Johnson,* with them *James Gay Gordon,* for appellee.—What was said by this court with respect to package tickets in disposing of the former controversy was the very basis and foundation of the decision.

The reasoning of the court upon which it based its conclusion that no change in fare had been intended by the company in placing package tickets on sale, has not only not been disproved but has been confirmed by the evidence offered by the complainant.

The evidence offered establishes conclusively that the contract immediately prior to and at the time of its adoption, was understood by its adversaries, as well as those who favored it, as establishing a five cent fare and none other.

The eighth section dealt only with the legal fare which had been previously established by ordinance of councils, and not with mere details of management which might in individual cases have enabled a passenger to travel over certain routes for less than the established fare.

Opinion by Mr. Justice Elkin, May 24, 1910:

The questions raised by this appeal were considered

and determined by this court in another proceeding be-
tween the same parties about one year ago: Philadelphia
v. Phila. Rapid Transit Co., 224 Pa. 544. When the
opinion in that case was handed down no dissent was
noted and the views therein expressed represent the
conclusions of the court. That case rules the one at
bar. The court was then asked to construe and did con-
strue the same contract, the same section of the contract,
the same proviso, and the same particular words in the
proviso, in a similar proceeding between the same parties,
involving the rights of the same contracting parties. The
question then raised and the issue now presented depend
upon the same words in the contract. The findings of fact
in the present proceeding do not differentiate the case at
bar in principle from the one then decided. The question
involved in both cases depends upon the construction
of the words "rates of fare" used in the contract, and
this question was exhaustively considered by our Brother
STEWART, who delivered the opinion of the court in the
former case. The court is now of opinion that the de-
cision in that case is conclusive of the questions raised by
this appeal. It is argued that the question then pre-
sented for determination was the right of the rapid
transit company to abolish transfers, and the discussion
of other matters relating to the proper construction of
the words "rates of fare" should be treated as dicta not
binding upon the courts or the parties. It may be that
the exact question then raised might have been put upon
narrower grounds so as to leave for future determination
the broader questions necessarily involved, but the court
in reaching its conclusion deemed it necessary to con-
sider broadly the effect of the particular words of the
proviso upon which the contentions were then and are
now based in order to properly determine the issue then
pending. Both cases depend upon the proper construc-
tion of the words "rates of fare" used in the contract.
The contracting parties failed to define in their written
agreement the meaning of these words, and the courts

are not at liberty to arbitrarily make a new contract for them or by construction to adopt a meaning not imported by the language used. In ordinary signification a rate of fare is the unit or basic price upon which the total charge is based. In the transportation of passengers by railroads the rate is fixed at so much per mile and the total charge depends upon the number of miles traveled, while in the transportation of freight the rate is usually fixed at so much per 100 pounds and the total charge is calculated upon this basis. In such cases no one would seriously contend that the rate of fare or the freight rate was the total charge determined upon the basis of the miles traveled or the number of pounds carried. In the carrying of passengers by street railway companies the rate is fixed at a flat price per ride, without reference to the distance traveled, and this basic price for a single ride in the ordinary and legal signification of the term is the rate of fare. A total charge of twenty-five cents for six rides is not a rate of fare either in the etymological or legal sense. No useful purpose will be served by amplifying the discussion at this time because the question was fully considered and disposed of by this court in the case referred to and the conclusion then reached will not be disturbed.

Decree affirmed at cost of appellant.

MESTREZAT, J., dissenting:

This case, I submit, is not ruled by the recent decision in Philadelphia v. Phila. Rapid Transit Co., 224 Pa. 544. The question in the present case was not raised by the pleadings and hence could not have been adjudicated in the former case. This is distinctly shown by the opinion of this court in which it is said (p. 551): "The bill complains that this action of the company (discontinuing transfers on strip tickets) is a change in its established rates of fare in force when the contract was entered into, inasmuch as it requires now a cash payment of five cents to secure the same transfer ride which before could be

had on a ticket costing but four and one-sixth cents; and since the change was made without the consent of the city, an injunction was asked for to restrain the company from discriminating in the way indicated. The question thus presented is a very narrow one." The right of the transit company to discontinue transfers on strip or six-for-a-quarter tickets without the consent of the city was, therefore, as declared by this court, the only question presented and adjudicated in the former case, and what was said in the opinion as to the right of the company to discontinue the strip ticket itself, the issue in the present case, was obviously purely dicta, and does not now control this court in disposing of that issue. In other words, in the former case, the question was whether the deprivation of the right to a transfer on a strip ticket was a change in the "rates of fare," while the question here is whether the withdrawal of the strip ticket and thereby compelling the passenger to pay five cents instead of four and one-sixth cents for his ticket is a change in the "rates of fare," within the intendment of the contract between the parties. The case is, therefore, not complicated by a prior ruling of this court on the issue now presented for determination and should be disposed of on its merits in view of the fact that the decision of the majority of the court affects 1,500,000 people of the city of Philadelphia and compels them to pay to a public service corporation more than $2,000,000, annually in violation, it is alleged, of the express stipulations of the corporation's contract which was executed by the city for the very purpose of protecting its citizens against extortionate demands of the company. With deference to my colleagues, I submit that the construction placed by them on the contract between the city and the transit company is not supported by reason or precedent, and, as shown by this record and not by the record in the former case, is in direct contradiction to the company's own interpretation of the contract in its address to the public on dis-

continuing the strip ticket, published in the press of the city within a week after the former decision of this court, wherein the company designates the withdrawal of the tickets as "a change in the schedule of charges," "the change in the transportation charges," "an increase of the rate per passenger," and "some changes in fares."

A statement of the material facts will aid in an intelligent consideration and correct conclusion of the controversy.

The city of Philadelphia and the rapid transit company entered into a contract on July 1, 1907, by which the latter and its underlying companies were relieved of many burdensome duties and obligations and acquired many valuable rights. The advantages derived by the parties under this contract were reciprocal. The eighth paragraph of the agreement contains, inter alia, the following: "Provided, however, that the present rates of fare may be changed from time to time, but only with the consent of both parties hereto." At the date of the contract, and immediately prior thereto, the defendant company had three prices for its service: (1) Five cents paid to the conductor in cash for a single ride, or a single ride and an additional ride on certain of the company's intersecting lines; (2) eight cents for which the passenger received an exchange ticket which entitled him to a single ride and an additional ride on a larger number of intersecting lines than on a transfer ticket; (3) twenty-five cents for which the passenger received six tickets printed on a slip of pasteboard, each ticket bearing on its face in bold type the words: "One Fare," and, as held by this court, entitled the passenger to the same service as a five cent cash fare.

On May 3, 1909, the transit company, by a resolution of its board of directors and without the consent of the city, withdrew the strip tickets from sale on and after the following day. The city thereupon filed this bill, praying that the strip tickets be decreed "fares" within the meaning of the contract of July 1, 1907, and that the

company be required to issue such tickets in like manner as was done at the date of the contract.

The answer filed by the transit company avers that the company's rate of fare is and has been five cents, denies that the discontinuance of the strip tickets is "a substantial increase of fare or change of fare," and further says: "We deny that at the time the said contract was made there were three rates of fare; we admit, however, that in addition to charging a cash fare of five cents for each separate ride this company did, at the time the said contract was entered into, sell an exchange ticket for eight cents which was good for an additional ride upon an intersecting car in accordance with the terms and conditions of said ticket, and that the company also sold, through its conductors, six tickets for twenty-five cents, each of which was received by the company at that time for one ride."

The single and only question raised in the court below, and for adjudication on this appeal, is whether the charge of twenty-five cents for six tickets, the equivalent of a single ticket for four and one-sixth cents, is a "rate of fare" within the meaning of the contract of July 1, 1907. Two of the three judges who heard the cause below answered the question in the negative, the other judge sustained the plaintiff's contention that the charge was within the contract and, therefore, could not be changed without the city's consent. Judge WILTBANK's dissenting opinion amply vindicates his conclusion.

There is no question raised on the record as to the validity of the contract nor is it claimed that the parties are not bound by the contract according to its legal import, as the learned president of the court below seems to think. His extended argument or "collateral observations" to show that "the company had no lawful right to abdicate its function of management, and the city had no lawful right to assume it," and that there was no duty resting on the company to sell tickets are questions not raised by the pleadings and are not in the case;

nor are they relied on as a defense in this proceeding. Neither party is denying the validity of the agreement or seeking to evade its operation; nor do the parties desire to avoid the single and simple issue raised by the pleadings.

What is a "rate of fare" in the legal as well as the usual and ordinary meaning of the expression when applied to the transportation of passengers by a carrier? The word "rate" has a primary meaning of ratio or proportion to some standard, but is also defined to be the price or amount stated or fixed on anything: 23 Am. & Ency. of Law (2d ed.), 888; Barrett v. The Wacousta, 2 Fed. Cas. 928; Raun v. Reynolds, 11 Cal. 14; Adams v. Union Railroad Co., 21 R. I. 134, 136. "Regular rates" for telephone service are the rates charged in the neighborhood for the service: Martinsburg Bank v. Telephone & Supply Co., 150 Pa. 36. "Fare" is the price of passage, or the sum paid or to be paid for carrying a passenger: 12 Am. & Eng. Ency. of Law (2d ed.), 881. And in McNeil Pipe & Foundry Co. v. Howland, 111 N. C. 615, 20 L. R. A. 743, "fare" is defined to be "a rate of charge for the carriage of passengers." "Rate," as used in the interstate commerce law, means the net amount the carrier receives from the shipper and retains: United States v. Chicago & Alton Ry. Co., 148 Fed. Repr. 646. The words "rate" and "fare" are synonymous when used in defining the price for transporting passengers by a carrier. In all the cases, they are used interchangeably as signifying the price or charge for transportation of a passenger. In Chase v. New York Central Railroad Co., 26 N. Y. 523, the statute under consideration provided that a railroad company should carry way passengers "at a rate not exceeding two cents per mile," and a subsequent statute imposed a penalty on the carrier for asking and receiving "a greater rate of fare." The court in holding that there was no necessity for the use of the words "of fare" in the earlier statute said (p. 525): "Here, the word 'rate' means price, amount;

and the adding of the words 'of fare' after the word 'rate' would have produced tautology, and, perhaps, ambiguity, and certainly a very inaccurate sentence, as will be perceived upon considering the meaning of the word 'fare.' It is, the price of passage, or the sum paid or to be paid for carrying the passenger. . . . The word itself included the idea of being carried as a passenger." The words "rate of fare," therefore, when used in dealing with the question of transportation by a carrier mean, under the settled definition of the words "rate" and "fare," the price or charge for the transportation of passengers.

Accepting such as the proper construction of the words, what were the "rates of fare" charged and collected by the defendant company for the transportation of passengers on July 1, 1907, the date of the contract between the company and the city? The answer to this question is not in doubt on the facts disclosed by the evidence, found by the trial court, or averred in the defendant's answer. The court below finds that at the date of the contract "the defendant had three prices for its service" in transporting passengers: (a) Five cents; (b) eight cents, and (c) twenty-five cents for six tickets each of which entitled the holder to a single ride or two rides on a transfer. This finding is not excepted to and, therefore, must be taken as true. Was not each of these "prices for its service" a "rate of fare," and were the prices not the "present rates of fare" in contemplation of the parties when they executed the contract? The finding of the court on this question of fact having been accepted as verity by both parties, these were the only "rates of fare" charged and collected by the carrier for transporting passengers on July 1, 1907. The "rates of fare" mentioned in the contract, therefore, under the finding of the trial court, included six tickets for twenty-five cents, the equivalent of a rate or price of four and one-sixth cents for a ticket, on which the holder was entitled to one ride and a transfer privilege over certain designated routes.

A like conclusion is reached in considering the facts set up in the answer filed by the defendant company. It denies that at the time the contract was made there were three rates of fare, but admits "that in addition to charging a cash fare of five cents for each separate ride this company did, at the time the said contract was entered into, sell an exchange ticket for eight cents which was good for an additional ride upon an intersecting car in accordance with the terms and conditions of said ticket, and that the company also sold, through its conductors, six tickets for twenty-five cents, each of which was received by the company at that time for one ride." Here, we have the admission by the defendant that at the date of the contract it had "three prices for its service" for transporting passengers over its lines, and that one of these prices or rates was six tickets for twenty-five cents, each ticket being received for one ride. The company does not allege, it will be observed, that it had at that time any other rate, charge or price for transporting passengers. It will also be noticed that, by its answer, it had three charges or rates for its service, and that each was different in amount from the others. It contends that it had but one "rate of fare" to wit, a cash fare of five cents, and that the other prices charged and collected for its service "were details of management which the company had adopted or changed from time to time during many years without demand, complaint or regulation on the part of the municipality." If the company's contention be correct that it had but a single five cent "rate of fare" at the time, why did the parties stipulate in the contract that "the present rates of fare," instead of "the present rate of fare," should not be changed without the city's consent? The question cannot be answered by imputing to the eminent counsel of the parties who supervised the drawing and execution of the contract inadvertence or ignorance of the facts or of the law. Not only the counsel and their clients but every individual in the city of Philadelphia

using the defendant's cars knew that at that date there were three "rates of fare" or prices charged, and not one "rate of fare," for the transportation of passengers over the defendant's lines.    It is, therefore, apparent that the parties and their counsel then treated the "three prices for its service," charged by the company, as the "present rates of fare" which could be "changed from time to time, but only with the consent of both parties." This conclusion is supported, and not refuted, by the company's contention that the fares charged for its service, other than the five cent fare, "were details of management which the company had adopted or changed from time to time during many years without demand, complaint or regulation on the part of the municipality." It was these frequent changes of fare that the city desired to prevent.    It believed that the changes, made at the pleasure of the company, had been detrimental to the interests of the people using car service, and the stipulation in question was inserted in the contract to protect the public by preventing a change of any or all of "the present rates of fare" without the city's consent.

As noted above, the trial court found that at the date of the contract the defendant had "three prices for its service," five cents, eight cents, and the strip ticket, the equivalent of a five cent cash fare.    The defendant company alleges in its answer that at that time it had only one rate of fare, viz., a five cent cash fare, which could not be changed without the city's consent, and that the other two "prices for its service," viz., the eight cent and strip ticket fares, were not rates of fare and could be changed at its pleasure.    I fully agree that the latter two rates are charges of the same character and if either is without the contract the other is likewise.    The eight cent rate, evidenced by an exchange ticket, entitled the passenger to a continuous ride on two intersecting cars, or was the equivalent of a fare of four cents on each car or for one ride.    The exchange ticket represented two rides for eight cents, being two cents less than two cash

fares which, without the ticket, the passenger was required to pay. The six strip tickets for which the holder paid twenty-five cents was, as held by this court in the former case, each the equivalent of a five cent fare and secured to the holder the same privileges. Conceding, therefore, as must be conceded, the two prices for transportation (eight cent and strip ticket fares) to be of the same nature or quality and occupying the same position under the contract, the strip ticket must be held to be within the contract or this court must reverse itself if the opinion in the former case correctly announced the judgment of its members. In discussing and determining what fares for transportation the company had established at the date of the contract, the opinion in Philadelphia v. Phila. Rap. Transit Co., 224 Pa. 544, says (p. 552): "It is quite evident, however, that the reference in the proviso was to the charges and fares the company was receiving at the date of the contract; it could be to nothing else. Accepting this as the meaning, it is necessary, first, to inquire what these several charges were. We have referred to one five cents for a single continuous ride in the same car. Another was, eight cents for a single change from one car to another on certain intersecting lines. It is not denied that these charges fall within the meaning of the proviso." If, therefore, the eight cent ticket which entitled the holder to two rides is conceded by this court to be a "rate of fare," does it not logically and irresistibly follow that the strip ticket which entitled the holder to two rides is also a "rate of fare" within the meaning of the contract?

If, however, there was any doubt as to the six-for-a-quarter tickets being a "rate of fare" within the contract of July 1, 1907, that doubt is entirely dispelled by the company's own construction of the contract contained in its statement to the public on May 3, 1909, when it discontinued the use of those tickets. This statement, a part of the record and now before this court, was issued seven days after the former opinion

in this case was filed, and of course was not before or considered by this or the trial court in that case. It is the company's interpretation of the contract and conclusively shows that the strip ticket was one of the "rates of fare" which could be changed only with the consent of both parties. The statement was issued by the company to inform the public "as to the necessity and reasons for its action (in discontinuing the strip tickets), and what its effect upon the patrons of the company will be." In other words, the company desired to assign its reasons for changing the "rates of fare" by the discontinuance of the strip ticket. The statement speaks of "the average fare" received being about 3.90 of a cent, and resulting partly from forty-eight per cent of the passengers "riding on package (strip) tickets, paying four and one-sixth cents." The statement then proceeds to show the necessity for the company increasing its revenues. It refers to the "average per passenger" above alluded to, to the dividends due the stockholders which "represent any increase in fares" for the next two years, to the object of the company in having all opposition to the "change in the transportation charges" dissipated. The statement then announces that "the last thing which you (the public) expected was any change in the schedule of charges which would result in an increase in the rate per passenger. . . . As already stated, the present average charge per passenger is 3.90. A careful estimate of the average charge under the new schedule is 4.35, a change of less than one-half of a cent per passenger. If the company continued strip tickets and abolished all their transfers, the average charge would be greater, viz., about 4.92."

This is a construction of the contract of July 1, 1907, by the defendant in which the plaintiff concurs, and as we said in People's Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22: "When we are asked to say what the parties mean or intended by their contract, it is entirely safe to point to their own construction of it." By the

defendant's statement all doubt is resolved against its contention that four and one-sixth cents is not a "rate of fare," or that the strip ticket does not represent a "rate of fare." The defendant's answer denies that the discontinuance of the strip ticket is "a substantial increase of fare or a change of fare," but the correctness of this denial may well be doubted in view of the fact that the discontinuance of those tickets increased the company's revenues more than $2,000,000, annually. Does the increase result from "the details of management" of the corporation, or from a change of the rates of fare made, as conceded in the statement, for the purpose of increasing the revenues of the company?

I think it clear that at the date of the contract a strip ticket, conferring on the holder the same privileges as a five cent cash fare, represented a "rate of fare" within the meaning of the contract, and, therefore, the company could not withdraw or discontinue it without the consent of the city. I would reverse the decree of the court below and grant the prayer of the bill.